[No. B018505. Second Dist., Div. Six. Aug. 3, 1987.]

PARK PLAZA, LTD., Plaintiff and Appellant, v.
EDWARD H. PIETZ et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

*Pursuant to rule 976.1 of the California Rules of Court, the portion of the opinion certified for publication follows.

†Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

COUNSEL

Bargiel & Sorensen, Bargiel & Carlson, Charles S. Bargiel, Sanders, Barnet, Jacobson, Goldman & Mosk, Mitchell, Silberberg & Knupp, Richard M. Mosk and Scott H. Bice for Plaintiff and Appellant.

Price, Postel & Parma, J. Terry Schwartz, Latham & Watkins and A. Victor Antola for Defendants and Respondents.

OPINION

WILLARD, J.*—This is an appeal from the denial of a petition to vacate an arbitration award and the granting of a request that the award be confirmed. We affirm.

FACTUAL BACKGROUND

Appellant, Park Plaza, Ltd., is a general partnership in which Fess E. Parker and Park Plaza Corp. are partners. In 1982 appellant entered into a written joint venture agreement with respondents Edward H. Pietz and Tod E. McClaskey as partners doing business under the name Red Lion. The joint venture was called Fess Parker-Red Lion Hotel. The purpose of the joint venture was to develop and operate a resort hotel near the ocean in Santa Barbara. The agreement gave each party the right of first refusal for 30 days after receiving notice that the other party desired to sell its interest to a third party.

By January 1985 Red Lion had advanced approximately $14 million to the joint venture, used principally to make payments on the site, to develop plans for the construction of the hotel, and for site preparation.

Red Lion owned or held interests in approximately 50 other hotels, most of which were in operation. The debt secured by the hotels was approxi-

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

mately $390 million and Red Lion had made advances to the entities owning the various hotels of approximately $37 million, including the $14 million advances to Fess Parker-Red Lion Hotel. About the end of 1985 an agreement was negotiated between Red Lion and third parties for a "leveraged buy-out." The buyers were to receive Red Lion's interests in the various entities that owned Red Lion hotels. The purchase price was comprised of the $390 million debt for which the hotels remained as security, $37 million to reimburse Red Lion for its advances, and $200 million for its "equity." The equity was derived by capitalizing projected income from the hotels in operation. The price was not allocated to individual hotels.

The purchasers were advised that appellant held a right of first refusal on Red Lion's interest in the joint venture. They and Red Lion subsequently allocated the purchase price applicable to the proposed hotel in Santa Barbara on a basis identical with that used to establish the price for the "chain." This consisted of two components: (1) a nominal value of $1,000 for equity because the hotel was not built and had no income to serve as a basis for projection of income to be capitalized, and (2) the advances of approximately $14 million made by Red Lion to the joint venture. Since there was no debt secured by the property, no component for debt entered into determination of the price. While there was some conflict in the evidence, the general partner of the firm that put together the leveraged buy-out testified that acquisition of the Santa Barbara property was not a precondition for the acquisition of all the other properties.[1]

After negotiation of this sale, Red Lion notified appellant that it had received the offer to buy its interest for $1,000 plus the advances of approximately $14 million it had made, and that it desired to accept. Pursuant to the first refusal provisions of the joint venture agreement, Red Lion on January 11, 1985, tendered identical terms and conditions to appellant. Upon receipt thereof, appellant protested vigorously, and on February 20, 1985, made formal demand for arbitration pursuant to a provision therefor contained in the joint venture agreement.

The arbitration was conducted by Parks Stillwell, a retired Los Angeles superior court judge, who made his award on May 23, 1985, ruling that the right of first refusal had been recognized by Red Lion's tender and had expired by appellant's failure to act. Other facts are stated in connection with the discussion that follows.

---

[1] There was also evidence to the contrary.

## ISSUES

Appellant bases its request for reversal on six separate, though in some cases related, contentions: 1. That the arbitrator failed to disclose a business relationship with counsel for respondents.

. . . . . . . . . . . . . . . . . . . . . .*

6. That the award on its face evidences errors of law.

## DISCUSSION

### I

Attached to appellant's petition to the trial court to vacate the award is a lengthy deposition of the arbitrator, taken subsequent to the award. In it the arbitrator volunteered the information that on August 17, 1983, the Los Angeles Superior Court in an unrelated case appointed him as a referee to handle discovery disputes. Latham and Watkins were attorneys for one of the parties there involved and are attorneys for two of the parties in this case.

Subsequently Judge Stillwell was appointed referee to preside over deposition discovery in a case in which Latham and Watkins were attorneys for one of the parties, and in which Milton Miller of Latham and Watkins participated in the taking of depositions. The deponents included two attorneys incarcerated at a prison in Lompoc, and depositions were taken on Mondays. The fact that Latham and Watkins were attorneys in that case was not specifically disclosed to appellant prior to the arbitration.

■ Appellant contends that the "relationship" between Latham and Watkins and Judge Stillwell, together with the failure of the arbitrator to specifically inform the parties about that relationship prior to the arbitration, constituted "corruption," which is cause for vacation of an arbitration award. (Code Civ. Proc., § 1286.2, subd. (b).)

■ Section 639, subdivision (e), of the Code of Civil Procedure authorizes the court to direct a reference where necessary "to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon." Section

---

* See foonote, *ante*, page 1414.

645.1 of the same code authorizes the court to order the parties to pay the fees of referees who are not employees or officers of the court, as such fees are fixed pursuant to section 1023. That section provides: "The fees of referees are such reasonable sum as the court may fix . . . ; but the parties may agree, in writing, upon any other rate of compensation, and thereupon such rates shall be allowed."

We construe such a court-appointed referee to be a subordinate judicial officer, performing services for the court, and receiving compensation fixed by the court. In no sense is he an employee or an independent contractor of the parties involved or of their attorneys.

In *Johnston* v. *Security Ins. Co.* (1970) 6 Cal.App.3d 839 [86 Cal.Rptr. 133], vacation of an arbitration award was affirmed where the "neutral umpire" was associated with a party's attorney in several legal cases, and was currently attorney in a case referred to him by the party's attorney. In these circumstances, the "umpire" was bound to disclose the relationship, regardless of actual bias. Similarly, in *Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345 [133 Cal.Rptr. 775, 84 A.L.R.3d 343], the court found implied bias when the arbitrator failed to disclose that he had actually been employed by one of the attorneys as an expert witness. In *Commonwealth Corp.* v. *Casualty Co.* (1968) 393 U.S. 145 [21 L.Ed.2d 301, 89 S.Ct. 337], the United States Supreme Court ruled that the arbitration award should be vacated because there was no disclosure of a close business connection between the arbitrator and one of the parties. In that case, involving an arbitration between a subcontractor and a prime contractor, it was later learned that one of the arbitrators had employed the prime contractor and paid him fees for services as an engineering consultant, including services on the projects involved in the arbitration.

The facts here do not demonstrate any business relationship, substantial or otherwise, between Judge Stillwell and respondents' counsel or clients of respondents' counsel. At no time did Judge Stillwell, as a court-appointed referee, act in any capacity other than as a subordinate judicial officer. There is no reasonable basis for an inference that his service as a court-appointed referee impugned his neutrality as an arbitrator.

Appellant's first contention is devoid of merit.

* * * * * * * * * * * * * * * * * * * *

*See foonote, *ante*, page 1414.

## VI

█ We turn now to the substantive issue in this appeal, whether the arbitration award, on its face, shows a prejudicial error of law.

█ The general rule that an arbitration award may not be vacated for an error of law is subject to an exception where the error appears on the face of the award. (*Utah Const. Co.* v. *Western Pac. Ry. Co.* (1916) 174 Cal. 156, 160-161 [162 P. 631]; *Abbott* v. *California State Auto. Assn.* (1977) 68 Cal.App.3d 763, 771 [137 Cal.Rptr. 580]; *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn.* (1985) 166 Cal.App.3d 1081, 1090 [213 Cal.Rptr. 62].)

█ Appellant challenges as legally erroneous paragraphs 3 and 4 of the award, which state: "3. The price, as set forth in said notice, while it was a portion of a considerably larger sum being offered to Red Lion for its interest in a number of other properties as well, was a proper allocation to Red Lion's interest in the joint venture of a portion of the total price, was not artificial nor unreasonable and did not constitute conduct by the purchaser and/or seller inimical to the rights of Claimant. [¶] 4. Claimant is not entitled to purchase Red Lion's interest in the joint venture for its fair market value as of January 11, 1984; no determination of that value is made."

Appellant contends that sale of respondents' total properties, including its interest in the joint venture, for a lump sum price, is unfair to it as the holder of a right of first refusal on the joint venture interest even if a portion of the lump sum price is fairly allocated to the joint venture interest. It suggests either that the entire sale of respondents' properties be enjoined or that it be afforded the right to purchase respondents' interest in the joint venture at its reasonable market value.

We have found no California decision directly in point, although there is relevant dicta contrary to appellant's position. In *Maron* v. *Howard* (1968) 258 Cal.App.2d 473 [66 Cal.Rptr. 70], the defendant owned 16 adjacent lots, 2 of which were leased to plaintiff with a right of first refusal to purchase. Defendant sold the 16 lots to a third person, Smith, for a lump sum, without any allocation of the price to the 2 lots leased by plaintiff. The trial court granted plaintiff specific performance of his contract to purchase the two lots at a price determined by the court to be fair market value. In affirming the judgment the court of appeal stated that the owner and the purchaser had prevented determination of the price at which the lessee had the right to purchase, and that it was fair to permit him to purchase at market value. On the issue before us the court in *Maron* stated: "Recogniz-

ing plaintiff's rights under the agreement, Howard and Smith could have allocated a portion of the total purchase price to the Maron parcel and thus have given the plaintiff a clear opportunity to have exercised his right. This they did not do." (At p. 486.)

Case law in other states is inconclusive on the question at issue. One decision (*Gyurkey* v. *Babler* (1982) 103 Idaho 663 [651 P.2d 928]) and dicta (e.g., *Hinson* v. *Roberts* (1986) 256 Ga. 396 [349 S.E.2d 454]) reject the allocation principle. As stated in the dissenting opinion in *Gyurkey*: "The thread running through the entire majority opinion is that a rule must be fashioned which will prevent fraud and undue unfair dealing which has as its purpose the defeat of the right of the holder of the right of first refusal." (651 P.2d at p. 938.)

In other states the allocation of a lump sum price to the property subject to a right of first refusal is approved if it is made in good faith. (See *Meyers* v. *Lovetinsky* (Iowa 1971) 189 N.W.2d 571; cf. *Brenner* v. *Duncan* (1947) 318 Mich. 1 [27 N.W.2d 320].)

In the case at hand the arbitrator found that the price allocation to the joint venture interest was not artificial, was not unreasonable, and was not conduct inimical to the rights of appellant. This finding is not subject to review as to whether it is supported by substantial evidence. (*Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 691 [72 Cal.Rptr. 880, 446 P.2d 1000]; *Rodrigues* v. *Keller* (1980) 113 Cal.App.3d 838, 843 [170 Cal.Rptr. 349]; *Ray Wilson Co.* v. *Anaheim Memorial Hospital Assn., supra,* 166 Cal.App.3d 1081, 1091.)[2]

The Idaho court rejected apportionment because it felt that apportionment presented the opportunity for chicanery. Courts or arbitrators, however, can review all of the relevant evidence and reject offers that are not made in complete good faith. This retains the concept, to which the parties have agreed, of affording the holder of the right of first refusal the right to meet the actual market price, and the right of the owner to secure that price. It avoids subjecting the parties to a different arrangement, to which they have not agreed, to the effect that if the owner desires to sell a larger parcel that includes the parcel subject to the right of first refusal, he must sell the smaller parcel to the holder of that right at market value. To reject the allocation concept because of possible abuse, where actual abuse can be adjudicated and defused, is to throw out the baby with the bathwater.

---

[2] If it were, it would be supported by the evidence that the price for Red Lion's interest in the Santa Barbara joint venture was determined by exactly the same formula used to determine the price for all other interests acquired, and that the acquisition of the other interests was in no way dependent upon acquisition of the Santa Barbara interest.

We adhere to the language in *Maron* v. *Howard, supra,* 258 Cal.App.2d 473, as did the arbitrator, and hold that the face of the arbitration award evidences no error of law.

The judgment of the trial court confirming the arbitration award is affirmed.

Gilbert, P. J., and Abbe, J., concurred.

A petition for a rehearing was denied September 2, 1987, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 29, 1987. Mosk, J., did not participate therein. Broussard, J., was of the opinion that the petition should be granted.