Filed 11/21/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| DARRELL L. HOLT,<br><br>      Plaintiff and Appellant,<br><br>   v.<br><br>CHARLES BROCK et al.,<br><br>      Defendants and Respondents. | C091636<br><br>(Super. Ct. No. CU18-082951) |

APPEAL from a judgment of the Superior Court of Nevada County, Thomas M. Anderson and S. Robert Tice-Raskin, Judges.  Affirmed.

Gavrilov & Brooks, Ognian Gavrilov, Sheila Wirkus Pendergast, and Eliezer M. Cohen for Plaintiff and Appellant.

Carlson Law Group, Mark C. Carlson, Anne M. Watson, Nathan M. Kelfer, and Steven T. Knuppel for Defendants and Respondents.

The trial court in an action to partition real property appointed defendant Charles Brock, a real estate broker, to determine the listing price and sell the property. Plaintiff Darrell L. Holt, one of the real property's owners, brought this action contending Brock violated fiduciary duties and committed other torts in the performance of his court-appointed role. The trial court granted summary judgment in favor of Brock, concluding he was protected under quasi-judicial immunity.

We affirm the judgment.

### UNDISPUTED FACTS AND HISTORY OF THE PROCEEDINGS

In 2003, Plaintiff and his sister, Darice Harlan each inherited a 50 percent share of real property in Nevada City. Plaintiff created the Holt Family Trust naming himself as trustee, and in 2013 transferred ownership of his share of the property into the trust.

Darice and her husband, Duane Harlan (collectively the Harlans) filed an action in 2014 to partition the property. (*Harlan v. Holt* (Super. Ct. Nevada County, 2016, No. CU14-080702).) The parties were unable to agree to terms of partition. In 2016, the trial court ordered that the property be sold and the proceeds divided equally. The court directed the parties to select a licensed real estate broker to list the property.

After the parties could not agree on a broker, the court ordered defendant Brock, a licensed broker with defendant Coldwell Banker Grass Roots Realty (collectively Brock), to list the property. The court ordered the parties to sign all listing agreements and other documents needed to list the property.

The terms of the listing were to include an exclusive listing for a period of no less than six months with a broker commission of six percent. The property was to be sold "as is" with a listing price of at least $882,500, the actual listing price to be determined by the broker's assessment of current market value.

The court ordered the parties to complete and submit all documentation the broker deemed necessary to effectuate the sale. The parties were to cooperate and not interfere with the broker's performance of his duties.

The court ordered the broker to provide a summary of the listing and marketing activity to the court and the parties each month. The broker could make recommendations regarding adjustments in the listing terms through the parties' stipulated agreement or upon a court order.

Any sale was subject to confirmation by the court. If any issue arose during the listing which the parties could not resolve, the court would determine the matter through ex parte procedures.

The parties signed the listing agreement, with plaintiff signing for the trust on May 4, 2016. The agreement set a listing price of $925,000 cash to the sellers.

Before or at the time of signing, plaintiff offered to purchase the property for $1 million and to represent himself if Brock agreed to reduce the commission to three percent or not charge plaintiff the three percent. Brock initially agreed, but on May 5 or 6, and the details are disputed, he informed plaintiff either he could not or would not change the listing agreement.

Plaintiff filed an ex parte motion to have Brock removed as the listing agent and broker. The trial court denied the motion. By separate order, the trial court reconfirmed that Brock was authorized and ordered by the court to market and sell the property "in accordance with the terms and for the price he deems appropriate" and as set forth in the court's original listing order.

On July 29, 2016, the trial court appointed a receiver, attorney Stephen Haas, to manage and approve the sale. The court stated, "Due, in part, to the nature of the relationship between the parties and the expressed desire of one party to purchase the property, the appointed broker has been placed in a difficult situation." The court instructed the receiver "to assume management of the property at issue in order to

3

facilitate the sale of the property. Mr. Haas will be the sole and final authority on management of the property pending sale and the sole authority [f]or approval and sale of the property." The court specifically authorized the receiver to execute all documents necessary to convey the Holt Family Trust's interest in the property to a buyer.

On August 16, 2016, plaintiff submitted a formal offer to purchase Darice's 50 percent share of the property for $462,500 (one-half of the listed $925,000 sale price). The offer's terms were $100 down with the remainder of the purchase price to be financed.

About one week later, the Harlans submitted a formal offer to purchase the Holt Family Trust's interest in the property and certain personal property for $475,000. The offer was an all-cash offer, with a $10,000 deposit and the remainder to be paid into escrow.

The receiver accepted the Harlans' offer. In his opinion, plaintiff's offer was not commercially reasonable, but the Harlans' offer exceeded the property's fair market value and was commercially reasonable. Brock obtained a back-up offer for the entire property in the amount of $1 million. The receiver used this later offer to enhance his negotiating position with the Harlans. Escrow closed on September 27, 2016.

Plaintiff filed this action against Brock on May 31, 2018. The trial court granted in part a motion by Brock for judgment on the pleadings with leave to amend. Plaintiff filed a first amended complaint, which is the operative pleading. He alleged causes of action for breach of fiduciary duty, breach of contract, negligence, and intentional infliction of emotional distress. He contended that Brock, among other things, breached his agreement to sell the property to plaintiff at a discounted commission, undervalued the property, and unreasonably sold the property for a price lower than plaintiff had offered.

Brock filed a motion for summary judgment or alternatively summary adjudication. The trial court granted summary judgment. The court ruled that Brock was

4

entitled to quasi-judicial immunity against plaintiff's claims for damages. Acting under court appointment, Brock was fulfilling quasi-judicial functions integral to the judicial process in the underlying partition action and as an arm of the court. His role was indispensable in bringing the partition action to an equitable conclusion. The court noted that at least one federal district court in an unreported decision had granted quasi-judicial immunity to a real estate broker appointed by the court to dispose of the litigants' property. (See *Kramer v. Dane* (E.D.N.Y., Sept. 19, 2018, No. 17-CV-5253 (JFB) (SIL)) 2018 U.S. Dist. Lexis 160240, at *9-10; 2018 WL 4489284, at *4.)

The trial court also relied on policy reasons to support its decision. Qualified persons might not ever agree to judicial appointments if their exposure to liability would be greater than the fee they would receive for accepting the appointment. Sufficient accountability was imposed on court-appointed brokers by limiting immunity to acts within the scope of the broker's authority, subjecting the broker to trial court supervision, and subjecting the trial court's decision to appellate review.

## DISCUSSION

Plaintiff contends the trial court erred in granting summary judgment. He claims that Brock (1) in violation of the Rules of Court, did not identify quasi-judicial immunity as an affirmative defense in his notice of motion or his separate statement of undisputed facts; and (2) was not entitled to quasi-judicial immunity because that immunity is available only to persons who function in a judicial role or as neutrals in an attempt to resolve disputes, not Brock who acted as an advocate and fiduciary for plaintiff. Plaintiff further contends (3) we should not affirm the judgment on the grounds Brock raised for summary adjudication, as material issues of disputed fact exist concerning each cause of action.

5

# I

## *Standard of Review*

"We review an order granting summary judgment de novo, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334 [].)

"A defendant moving for summary judgment must show 'that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action.' (Code Civ. Proc., § 437c, subd. (p)(2).) 'In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor.' (*Saelzler v. Advanced Group* 400 (2001) 25 Cal.4th 763, 768 [].) We accept as true both the facts shown by the losing party's evidence and reasonable inferences from that evidence. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 856 [].)

"Summary judgment is appropriate only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists if the evidence and inferences therefrom would allow a reasonable juror to find the underlying fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at pp. 850, 856.)" (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1158.)

## II

### *Rules of Court Violations*

Rule 3.1350 of the California Rules of Court requires a party moving for summary judgment to identify in its separate statement of undisputed material facts each affirmative defense to be raised in the motion. (Cal. Rules of Court, rule 3.1350(d)(1).) If the party moves for summary adjudication of issues, any affirmative defense must be stated specifically in the notice of motion and be repeated in the separate statement of undisputed material facts. (Cal. Rules of Court, rule 3.1350(b).)

Plaintiff contends the trial court erred in granting summary judgment because Brock did not identify quasi-judicial immunity as an affirmative defense in his separate statement of undisputed facts and his notice of motion. Plaintiff argues the omissions caused a due process violation, as no material facts were identified to support adjudication of the defense. As a result, Brock did not meet his burden on summary judgment to show that undisputed facts supported each element of the affirmative defense.

"[T]he court's power to deny summary judgment on the basis of failure to comply with California Rules of Court, rule 3.1350 is discretionary, not mandatory." (*Truong v. Glasser* (2009) 181 Cal.App.4th 102, 118.) The evidence in the record indicates the trial court did not abuse its discretion by granting summary judgment despite the procedural violations. Plaintiff did not raise this procedural issue before the trial court either in his written opposition to the motion or at oral argument. Instead, he argued against quasi-judicial immunity on the merits. The trial court ruled on the defense based on undisputed relevant facts and prior court rulings which were subject to judicial notice. There is no evidence plaintiff was not aware of the affirmative defense, was not given an opportunity to address the defense on its merits, or was impaired by the procedural defect from marshalling evidence of disputed facts.

Plaintiff asserts that the procedural defect caused a due process violation because "no material facts were identified to support adjudication of the affirmative defense." We disagree. As we will explain below, the trial court's orders authorizing and ordering Brock to list the property at a price he determined and requiring the court to approve any sale—all undisputed facts—were sufficient to determine the issue of quasi-judicial immunity as a matter of law.

Indeed, at the hearing on the motion, plaintiff's counsel effectively admitted there were no disputed material facts on the issue of quasi-judicial immunity. When the trial court at the hearing asked plaintiff's counsel if there were any disputed facts on the issue of quasi-judicial immunity, counsel correctly stated that "[t]he only issues that really deal with quasi-judicial immunity are whether [Brock] was appointed and what his role would be in the process." Counsel stated he did not know if there were "major" disputes on those issues, but "there were some back and forth in the separate statement about what exactly Mr. Brock's role was vis-à-vis what the Court told him to do." When the court pressed counsel again for any disputed material facts on the issue, counsel repeated only that there were disputes regarding the scope of the trial court's orders. The partitioning court's orders, however, were not ambiguous.

Because plaintiff argued against the affirmative defense of quasi-judicial immunity on its merits and did not show how the procedural defect impaired his ability to oppose the defense, the trial court did not abuse its discretion by granting summary judgment despite violations of California Rules of Court, rule 3.1350. (See *Brown v. El Dorado Union High School Dist.* (2022) 76 Cal.App.5th 1003, 1020 [no abuse of discretion where plaintiff did not explain how the alleged deficiency in the defendant's separate statement impaired his ability to demonstrate that material facts were in dispute]; *Truong v. Glasser, supra*, 181 Cal.App.4th at p. 118 [no abuse of discretion in not denying summary judgment motion for violations of rule 3.1350 where facts critical to

the ruling were adequately identified, and plaintiffs did not explain how the procedural violations impaired their ability to marshal evidence of disputed material facts].)

III

*Quasi-judicial Immunity*

Plaintiff contends that Brock does not qualify for quasi-judicial immunity. He argues that quasi-judicial immunity is available only to persons who function as neutrals in an attempt to resolve disputes or perform other judicial acts on behalf of the court. No reported California opinion has extended quasi-judicial immunity to court-appointed real estate brokers, and plaintiff asserts that in this instance, Brock did not execute a duty normally performed by a judge or attempt to resolve a dispute as a neutral.

Plaintiff claims that Brock "undertook an ordinary commercial transaction as an advocate for his joint seller clients." The listing agreement created an agency relationship in which Brock acted for the sellers to sell the property for the highest possible price, owed fiduciary duties to them, and relied upon their exercise of ultimate authority to set the listing price and sell the property. Brock was required to advocate for their interests in selling the property and could not act independently from their instructions. Plaintiff asserts that the court's appointment of Brock did not change the standard of care or abrogate the duties Brock owed to the sellers.

Quasi-judicial immunity is an extension of the doctrine of judicial immunity. Judicial immunity bars civil actions against judges for acts they perform in the exercise of their judicial functions. (*Howard v. Drapkin* (1990) 222 Cal.App.3d 843, 851 (*Howard*).) The immunity applies to all judicial determinations, "including those rendered in excess of the judge's jurisdiction, no matter how erroneous or even malicious or corrupt they may be," except when the judge acts in the clear absence of all jurisdiction. (*Ibid*.)

Two policies support the doctrine of judicial immunity. The doctrine protects the finality of judgments and discourages inappropriate collateral attack. (*Howard, supra*,

9

222 Cal.App.3d at p. 852.)  The doctrine also " 'protect[s] judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.  [Citation.]' [Citation.]  With respect to the latter reason, the immunity is necessary in order to have an independent and impartial judiciary.  The public is best served when its judicial officers are free from fear of personal consequences for acts performed in their judicial capacity."  (*Ibid*.)

Quasi-judicial immunity extends judicial immunity "to persons other than judges if those persons act in a judicial or quasi-judicial capacity."  (*Howard, supra*, 222 Cal.App.3d at pp. 852-853.)  The *Howard* court explained and held that quasi-judicial immunity exists for at least three classes of persons who are not judges.

A first class of persons entitled to quasi-judicial immunity includes persons who perform functions normally performed by a judge, or who act in a judicial or quasi-judicial capacity.  (*Howard, supra*, 222 Cal.App.3d at pp. 852-853.)  Such persons include court commissioners acting as temporary judges or performing subordinate judicial duties ordered by the court, administrative hearing officers, arbitrators, organizations sponsoring an arbitrator, referees, prosecutors, and officials of the State Bar and the Committee of Bar Examiners.  (*Id.* at p. 853; *Regan v. Price* (2005) 131 Cal.App.4th 1491, 1495 [referee].)

This class also includes public officials who are connected with the judicial process through investigating crimes and instituting criminal proceedings.  These persons include law enforcement officers, prosecutors, grand jurors, a building inspector charged with investigating an alleged violation of a building ordinance, a deputy fire marshal charged with investigating fires, and an assistant city engineer whose duties include the investigation of particular crimes.  (*Howard, supra*, 222 Cal.App.3d at pp. 854-855; *White v. Towers* (1951) 37 Cal.2d 727, 730-732.)

When determining whether a person is acting in a judicial or quasi-judicial capacity, courts look at the nature of the duty performed to determine whether the act is a

judicial act, not the name or classification of the person who performed it. *(Howard, supra*, 222 Cal.App.3d at pp. 853-854.) As with judges, immunity is necessary for these persons to perform their function independently and impartially. (*Id*. at p. 853.)

A second class of persons entitled to quasi-judicial immunity includes persons who function apart from the courts but are engaged in neutral dispute resolution. (*Howard, supra*, 222 Cal.App.3d at pp. 858-859.) In addition to arbitrators and referees, such persons include persons conducting less-traditional alternative dispute resolution procedures such as volunteers working with a court through a local bar association who conduct voluntary settlement conferences, and party-selected mediators and "neutral fact-finders." (*Id*. at p. 858.) These alternative methods of dispute resolution have become critical to the proper functioning of increasingly congested trial courts. (*Ibid*.) The justification for granting quasi-judicial immunity to persons in the other classes "applies with equal force to these neutral persons who attempt to resolve disputes." (*Id*. at p. 859.)

That neutral dispute resolution providers are retained privately and have duties to their clients does not preclude quasi-judicial immunity from protecting them. Rather, immunity is appropriate because these persons do not advocate for their clients. "The job of third parties such as mediators, conciliators and evaluators involves impartiality and neutrality, as does that of a judge, commissioner or referee; hence, there should be entitlement to the same immunity given others who function as neutrals in an attempt to resolve disputes." (*Howard, supra*, 222 Cal.App.3d at p. 860.)

A third class of persons entitled to quasi-judicial immunity includes persons connected to the judicial process who are not public officials, arbitrators, or referees but who serve functions integral to the judicial process and act as arms of the court. (*Howard, supra*, 222 Cal.App.3d at pp. 855-857.) This class includes (1) persons appointed by the courts for their expertise, such as mediators, guardians ad litem, therapists, receivers, Probate Code court investigators, custody evaluators, and bankruptcy trustees; and (2) persons not appointed by the courts but whose work product

11

comes into the judicial process to be used by the courts, such as probation officers who prepare presentencing reports and social workers and psychiatrists involved in terminating parental rights. (*Ibid*.; *Bergeron v. Boyd* (2014) 223 Cal.App.4th 877, 885-889 [court appointed custody evaluator]; *McClintock v. West* (2013) 219 Cal.App.4th 540, 550-552 (*McClintock*) [guardian ad litem]; *Fisher v. Pickens* (1990) 225 Cal.App.3d 708, 712-715 [court investigator].)

These persons fulfill quasi-judicial functions " 'intimately related to the judicial process.' " (*Howard, supra*, 222 Cal.App.3d at p. 857, quoting *Myers v. Morris* (8th Cir. 1987) 810 F.2d 1437, 1466-1467.) Without immunity, these persons "will be reluctant to accept court appointments or provide work product for the court's use. Additionally, the threat of civil liability may affect the manner in which they perform their jobs." (*Howard*, at p. 857.)

In marketing the property, Brock was not performing functions normally performed by a judge, nor was he engaging in neutral dispute resolution. He was, however, appointed by the court for his expertise to carry out the court's order to sell the property.

Mere appointment by the court is insufficient to establish quasi-judicial immunity. "The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability. Accordingly, the 'touchstone' for the doctrine's applicability has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.' [Citation.] When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function." (*Antoine v. Byers & Anderson, Inc.* (1993) 508 U.S. 429, 435-436 [113 S.Ct. 2167, 2171; 124 L.Ed.2d 391, 399-400], fn. omitted [function performed by court reporters not entitled to quasi-judicial immunity].)

In the unique situation before us, the court's listing orders did more than merely appoint Brock to sell the property. They vested an element of discretionary authority in Brock to assist the court in resolving the dispute between plaintiff and his sister Darice. In plaintiff's words, Darice brought the partition action in 2014 because he and Darice were "at a standstill" over what to do with the property. Because the "impasse" remained unresolved more than a year later, the trial court ordered the property to be sold and the parties to select a real estate broker to market and sell the property. The parties could not agree on a broker, so the court selected one for them.

Contrary to plaintiff's characterization, Brock did not "under[take] an ordinary commercial transaction as an advocate for his joint seller clients." He was ordered by the court to market the property as part of a partition action. And to effectuate the partition, the court gave Brock limited discretionary authority to resolve a key dispute between the sellers, the very disagreement that likely led to the partition action—the property's value. Under the court's original listing order, the actual listing price was to be determined by Brock's assessment of current market value. By separate order, the trial court confirmed that Brock was authorized to market and sell the property "in accordance with the terms and for the price *he* deems appropriate . . . ." (Italics added.) In other words, the sellers had disputed the property's value which led to the partition action, and the trial court vested the determination of the property's fair market value and sales price with Brock notwithstanding disagreement by or between the sellers. By determining the sales price, Brock resolved the principal dispute between the sellers.

In a sense, Brock also served as an agent of the court with limited authority. The court, and not the sellers, set Brock's commission rate. Brock was authorized to adjust the listing terms upon a court order and without the sellers' stipulation. The court required Brock to report his marketing activities to the court and the sellers on a monthly basis. And final approval of any sale negotiated by Brock rested with the court, not the sellers. In short, Brock was appointed by the court to exercise discretionary judgment in

13

serving a function integral to the partition action and as an arm of the court.  As a result, he was entitled to quasi-judicial immunity.

Contrary to plaintiff's characterization, Brock was not appointed to advocate for the sellers.  He was appointed to act in the sellers' best interests, which is not necessarily advocacy and does not preclude application of quasi-judicial immunity.  For example, in *McClintock, supra*, 219 Cal.App.4th 540, the court of appeal determined that a guardian ad litem appointed for an adult party in a divorce proceeding was entitled to quasi-judicial immunity.  A guardian ad litem owes fiduciary duties to its ward.  (See *J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 964-965.)  And although the guardian ad litem owes fiduciary duties and represents the ward in the litigation, "he or she does not act as an advocate, and does not simply represent the ward's wishes." (*McClintock*, at p. 549.)  The court in effect is the guardian, and the guardian ad litem is an officer and representative of the court who must act in the ward's best interests.  (*Id.* at pp. 549, 551.)

Brock's roll as an advocate in this action is even less tenuous than the guardian ad litem in *McClintock*.  Plaintiff and Darice were opposing parties in a litigation.  Brock did not represent either in the partition action as a representative or an advocate.  Instead, Brock was ordered by the court, despite the parties' conflicts, to act in the parties' best interest in marketing and selling the property.  Brock reported to the trial court, and his authority to determine the property's value and listing price was derived from the court's order vesting him with that authority, not from the parties, whom the court ordered to sign the listing agreement.  In a partition action, the court is the ultimate seller of the property, and Brock acted as a limited agent for the court in that process.  He was not the parties' advocate.

Policy reasons that justify quasi-judicial immunity also support extending immunity to Brock.  His determination of the property's listing price and value should not be clouded by the possibility of legal action by one of the property owners contending the price is too low—which is what this action is.  Without immunity, persons such as

14

Brock who are asked to perform a discretionary function on behalf of the court in the face of opposition from the affected parties "will be reluctant to accept court appointments or provide work product for the courts' use. Additionally, the threat of civil liability may affect the manner in which they perform their jobs." (*Howard, supra*, 222 Cal.App.3d at p. 857.)

We thus conclude the trial court correctly extended quasi-judicial immunity to Brock in this action and, as a result, correctly granted summary judgment in his favor. Because we affirm on this ground, we need not address plaintiff's additional arguments against the motion for summary adjudication.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Brock. (Cal. Rules of Court, rule 8.278(a).)

 

 

HULL, Acting P. J.

 

We concur:

 

MAURO, J.

 

HOCH, J.