Filed 2/26/26 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| SIMON SEMAAN et al., | |
| Plaintiffs and Appellants, | G064385 |
| v. | (Super. Ct. No. 30-2023-01352827) |
| ROBERT P. MOSIER et al., | |
| Defendants and Respondents. | ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |


It is ordered that the opinion filed herein on February 5, 2026, be modified as follows:

On page 16, after the first full paragraph, insert the following two paragraphs:

"In a petition for rehearing, Plaintiffs for the first time cite *Leon v. County of Riverside* (2023) 14 Cal.5th 910 (*Leon*) and argue it "negates the reasoning" for extending quasi-judicial immunity to court-appointed receivers. In *Leon*, the California Supreme Court held that Government Code section 821.6, which immunizes public employees from liability for "instituting or prosecuting any judicial or

administrative proceeding" within the scope of their employment, does not confer immunity from claims based on other injuries inflicted in the course of law enforcement investigations. (*Leon, supra*, 14 Cal.5th at p. 915.) The *Leon* court explained that section 821.6 was part of the Government Claims Act (Gov. Code, § 810 et seq.), which "abolished common law tort liability and immunity for public entities and replac[ed] it with 'a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts.'" (*Leon*, at pp. 917-918.)

The present case concerns common law quasi-judicial immunity for court-appointed receivers, not statutory immunity of public employees engaging in law enforcement. The Government Claims Act "was not intended to override common law quasi-judicial immunity." (*Bocanegra v. Jakubowski* (2015) 241 Cal.App.4th 848, 857.)"

There is no change in the judgment.

The petition for rehearing is DENIED.

SANCHEZ, ACTING P. J.

WE CONCUR:


SCOTT, J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 2/5/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SIMON SEMAAN et al., | |
| Plaintiffs and Appellants, | G064385 |
| v. | (Super. Ct. No. 30-2023-01352827) |
| ROBERT P. MOSIER et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Kimberly A. Knill, Judge. Affirmed.

Bunt & Shaver and David N. Shaver for Plaintiffs and Appellants.

Zelms, Erlich & Lenkov, Rinat Klier Erlich and Suzanna Harman for Defendants and Respondents.

\*          \*          \*

# INTRODUCTION

Plaintiffs[1] appeal from the trial court's order granting the special motion of defendants Robert P. Mosier and Mosier & Company, Inc.[2] to strike Plaintiffs' complaint pursuant to the anti-SLAPP statute, Code of Civil Procedure section 425.16.[3] Plaintiffs alleged that Mosier, the court-appointed receiver in a criminal prosecution against plaintiff Simon Semaan, had breached fiduciary duties owed to Plaintiffs by not complying with a court order to liquidate certain investment accounts.

We affirm. We hold that a court-appointed receiver is protected by quasi-judicial immunity for the receiver's discretionary acts and decisions. Because Plaintiffs' claims arise out of Mosier's discretionary decisions made in his capacity as court-appointed receiver, Plaintiffs did not meet their burden of proving their claims have the minimal merit necessary to survive an anti-SLAPP motion. As an antecedent to that holding, we conclude Plaintiffs' claims against Defendants arose out of constitutionally protected activity under section 425.16(e)(4), and Plaintiffs have forfeited any argument to the contrary.

---

[1] Plaintiffs are Simon Semaan, Pierrette Semaan, Mia Semaan, Simon Semaan, Jr., Me.S. (a minor), and Gilberte Semaan.

[2] We refer to Robert P. Mosier as Mosier, and to Moiser and Mosier & Company, Inc. together as Defendants.

[3] "SLAPP" is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.) Further statutory references are to the Code of Civil Procedure unless otherwise indicated. We refer to section 425.16, subdivision (e) as section 425.16(e) and to the special motion authorized by section 425.16, subdivision (b)(1) as an anti-SLAPP motion.

## ALLEGATIONS

Plaintiffs alleged the following in their complaint against Defendants.

In September 2021, the State of California filed a felony complaint against plaintiff Simon Semaan charging him with seven counts of violating Insurance Code section 11760, subdivision (a) for allegedly making knowingly false or fraudulent statements of fact material to the determination of a premium rate. At the same time, the State brought an ex parte application for an order to show cause and temporary restraining order to preserve assets subject to levy under Penal Code section 186.11. The court issued a temporary restraining order and appointed Mosier as receiver. Accounts and assets identified in an attachment to the temporary restraining order were seized and frozen.

On October 12, 2021, the criminal court issued an order to banks and financial institutions notifying them of the temporary restraining order, the appointment of a receiver, and the seizure and freezing of accounts. The order to the banks and financial institutions also identified five TDAmeritrade accounts (account Nos. 7818, 5578, 3197, 3199, and 3201) which were excluded from the temporary restraining order.

On December 7, 2021, the criminal court issued an order on the receiver's first petition for instructions. This order included the following provision: "[T]he Receiver is ordered to liquidate all stock holding[s] into cash as soon as practicable after the signing of this order and hold the cash in the accounts subject to further order of the Court."

As of January 25, 2022, Mosier had not liquidated the stock holdings into cash. On that date, Mosier, as receiver, filed a second petition for instructions regarding the liquidation of investment accounts. In that

3

petition, Mosier alleged that TDAmeritrade had imposed as a requirement on closing the accounts that the receiver use his personal and company tax identifications and his personal information, which would have the effect of making the receiver the beneficial owner of the accounts and subjecting the receiver to tax consequences. Mosier alleged that requirement was "non-standard and unacceptable."

On February 3, 2022, the court issued an order relieving Mosier as receiver and appointing a successor receiver. Plaintiffs assert that Mosier was relieved as receiver for failing to liquidate the investment accounts; however, the order does not give a reason for replacing him.

In March 2022, Mosier filed a motion seeking approval of his final account and an order barring any claims against him. The Plaintiffs opposed that motion and requested permission to sue the receiver for failure to comply with the December 7, 2021 order. The court ruled that it would not maintain jurisdiction over a civil lawsuit against Mosier as receiver and stated it was not making any rulings or findings on whether the receiver was personally liable based on his compliance or noncompliance with the December 7, 2021 order.

Plaintiffs alleged that as a result of Mosier's failure to liquidate the investment accounts they suffered damages in the amount of $1,180,854.95, which was the reduction in value of those accounts from December 8, 2021 to February 3, 2022.

## PROCEDURAL HISTORY

In October 2023, Plaintiffs filed their complaint for breach of fiduciary duty against Defendants. Defendants filed an answer and the anti-SLAPP motion. In a declaration submitted with the anti-SLAPP motion, Mosier stated that in the weeks following the issuance of the December 7,

4

2021 order, the Orange County District Attorney's Office and Simon Semaan continued settlement negotiations. As a consequence, Mosier was "reluctant to launch into a protracted and expensive process of pursuing the remaining TDAmeritrade accounts, as these actions would likely be reversed as result of a settlement that would return control of these investment accounts to Simon Semaan."

Plaintiffs filed opposition to Defendants' anti-SLAPP motion. With the opposition, Plaintiffs submitted a declaration from a certified public accountant and court-appointed receiver who declared, among other things, that the requirements imposed by TDAmeritrade to closing the investment accounts were not nonstandard and did not justify Mosier's delay in liquidating those accounts.

In granting Defendants' anti-SLAPP motion, the trial court concluded that Plaintiffs' claims arose out of protected activity because they were based on acts falling within Mosier's course of appointment as receiver. The court also concluded that Plaintiffs had not shown their claims had the requisite minimum merit because (1) Plaintiffs' breach of fiduciary duty claim came within the litigation privilege and (2) Mosier was protected by quasi-judicial immunity.

## DISCUSSION

### I.

### Summary of anti-SLAPP Law and Standard of Review

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court

5

determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

Anti-SLAPP motions are resolved through a two-step analysis. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) At the first step, the defendant bears the burden of showing the challenged allegations or claims arise out of activity protected under section 425.16. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*); *Baral,* at p. 384.) If the defendant meets this burden, then, at the second step, the burden shifts to the plaintiff to demonstrate the claims have at least "'minimal merit'" (*Park,* at p. 1061) by making "a prima facie factual showing sufficient to sustain a favorable judgment" (*Baral,* at p. 385).

"We review an order granting or denying an anti-SLAPP motion under the de novo standard and, in so doing, conduct the same two-step process to determine whether as a matter of law the defendant met its burden of showing the challenged claim arose out of protected activity and, if so, whether the plaintiff met its burden of showing probability of success." (*Newport Harbor Offices & Marina, LLC v. Morris Cerullo World Evangelism* (2018) 23 Cal.App.5th 28, 42.) The usual rules of appellate review apply: A trial court's judgment is presumed correct, and the appellant bears the burden to demonstrate the trial court committed an error justifying reversal. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*).) The burden of demonstrating error falls on the appellant even when, as here, the standard of review is de novo. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 708.)

6

## The Trial Court Did Not Err by Granting Defendants' anti-SLAPP Motion

*A. First Step: Plaintiffs' Claims Arose Out of Activity Protected Under Section 425.16(e)(4)*

A claim is subject to an anti-SLAPP motion if it arises out of constitutionally protected activity. (§ 425.16, subd. (b)(1).) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra*, 2 Cal.5th at p. 1062.)

Section 425.16(e) identifies the following four categories of activity protected by the anti-SLAPP statute: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16(e)(1)–(4).)

Plaintiffs do not directly address the first step of the anti-SLAPP analysis. The California Rules of Court require that every appellate brief "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument." (Cal. Rules of Court, rule 8.204(a)(1)(B).) The legal discussion of Plaintiffs' opening brief has three point headings: (1) "Quasi-Judicial Immunity Does Not Bar the Claim

Against Mosier Because he Violated the Court Order to Sell the Stocks Held in the IRA Accounts for Which He Was Terminated"; (2) "The Litigation Privilege Does Not Apply to a Receiver Who Fails to Comply with a Court Order"; and (3) "Plaintiffs have Demonstrated High Probability of Prevailing on the Merits of Their Case." All three headings concern the second step of anti-SLAPP analysis—a plaintiff's ability to make a prima facie factual showing. Although the litigation privilege of Civil Code section 47, subdivision (b) can bear upon the analysis of either the first step or second step (*Osborne v. Pleasonton Automotive Co., LP* (2024) 106 Cal.App.5th 361, 375–376), Plaintiffs argue that "[t]he litigation *immunity* does not apply" (italics added), which indicates they are asserting it only as to the second step. Further, conduct protected by the anti-SLAPP statute does not equate with conduct covered by the litigation privilege (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 737) and, therefore, the applicability of the litigation privilege does not resolve whether a communication is a protected activity under section 425.16(e)(1) or (2) (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1263).

Plaintiffs make a brief, perfunctory argument that their claims did not arise out of protected activity. That argument is buried, however within a lengthy section with the point heading on quasi-judicial immunity and simply restates the assertion that Mosier's actions are not protected by quasi-judicial immunity.

"Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.) Plaintiffs have forfeited any argument regarding the first step of the anti-SLAPP analysis and therefore have not met their burden as appellants of demonstrating prejudicial error.

8

(*Jameson, supra*, 5 Cal.5th at p. 609.) Nevertheless, we address the first step of the anti-SLAPP analysis and conclude Plaintiffs' claims arose out of protected activity.

We start by identifying the activity underlying or forming the basis for Plaintiffs' claims. "[T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'" (*Park, supra*, 2 Cal.5th at p. 1063.)

Plaintiffs alleged that Mosier failed to comply with the court's order to liquidate the investment accounts. Phrased in another (and more neutral way), Plaintiffs' claims arose out of Mosier's decision not to liquidate the investment accounts.[4] The damages alleged by Plaintiffs were caused by the drop in value of the investment accounts between the issuance of December 7, 2021 order and February 3, 2022, the date on which Mosier was relieved of his duties as receiver. The proximate cause of the alleged damages was Mosier's decision regarding liquidation of the investment accounts; those damages presumably would not have been suffered if Mosier had liquidated those accounts.

---

[4] Whether Mosier's decisions about liquidating the investment accounts constituted a violation of the December 7, 2021 order has not, to our knowledge, ever been adjudicated.

Plaintiffs' claims against Mosier arose out of conduct protected by section 425.16(e)(4).[5] Section 425.16(e)(4) is a catchall provision protecting "any other *conduct* in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Italics added.) To be protected under section 425.16(e)(4), the conduct must have referred to an issue of public interest or contributed to public discussion or resolution of the issue. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 900.)

Mosier's conduct and decisions as a court-appointed receiver were in furtherance of the exercise of a constitutional right of petition—the criminal prosecution of Simon Semaan. As to that prosecution, Plaintiffs' complaint alleged: "On September 8, 2021, the People of the State of California . . . filed a felony complaint charging Simon Semaan with seven counts in violation of Section 11760[, subdivision] (a) of the California Insurance Code, a felony[,] for allegedly making knowingly false or fraudulent statements to the determination of the premium rate for a Worker's Compensation insurance policy for the purpose of reducing the premium, rate, or cost of said insurance." In his declaration in support of the anti-SLAPP motion, Mosier stated: "On or about September 8, 2021, I was

---

[5] Plaintiffs' claims did not arise out of Mosier's written or oral statements and therefore do not fall within section 425.16(e)(1) or (2). There were, to be sure, communications made in connection with the investment accounts: Mosier communicated with TDAmeritrade and, in his reports and petition for instructions, to the court. But those communications were merely incidental to Plaintiffs' claims and did not undeerlie or form the basis for them. (*Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 312–313.) Instead, the "core injury producing conduct" alleged by Plaintiffs (*Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1020), was Mosier's decision itself not to liquidate the investment accounts. (See *Park, supra*, 2 Cal.5th at p. 1060.)

appointed as Receiver in the criminal case of *The People of the State of California v. Simon Semaan*, which was pending in this Court under case number 21CF2545, and wherein Plaintiff Simon Semaan was a criminal defendant in one of the largest workers compensation insurance fraud cases in California."[6]

The prosecution of one of the largest workers' compensation insurance fraud cases in California history certainly raises public issues or is a matter of public interest that "'could affect large numbers of people beyond the direct participants.'" (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 145.) Mosier's role as receiver and his exercise of control over millions of dollars in assets bore a direct functional relationship to that prosecution and its effect on the public. (*Id.* at p. 150.)

*B. Step Two: Mosier Is Protected by Quasi-Judicial Immunity*

At the second step of the anti-SLAPP analysis, the burden shifts to the plaintiff to demonstrate the claims have at least "'minimal merit'" (*Park, supra*, 2 Cal.5th at p. 1061) by making "a prima facie factual showing sufficient to sustain a favorable judgment." Plaintiffs could not establish their claims have minimal merit because Mosier's actions as receiver are subject to quasi-judicial immunity.

"Judicial immunity bars civil actions against judges for acts they perform in the exercise of their judicial functions." (*Holt v. Brock* (2022) 85 Cal.App.5th 611, 620–621 (*Holt*).) "[Judicial] immunity is necessary in order to have an independent and impartial judiciary. The public is best served when its judicial officers are free from fear of personal consequences for acts performed in their judicial capacity." (*Id.* at p. 621.)

---

[6] Plaintiffs did not object to any part of Mosier's declaration.

11

Quasi-judicial immunity extends judicial immunity to persons other than judges when acting in a judicial or quasi-judicial capacity. (*Holt, supra*, 85 Cal.App.5th at p. 621.) Quasi-judicial immunity has been held to apply to three classes of persons who are not judges. (*Ibid.*) The first class includes persons, such as temporary judges, arbitrators, and prosecutors, who perform functions that are usually performed by a judge or who act in a judicial or quasi-judicial capacity. (*Ibid.*) Such functions may include investigating crimes and instituting criminal proceedings. (*Ibid.*) The second class includes persons, such as arbitrators, referees, and mediators, "who function apart from the courts but are engaged in neutral dispute resolution." (*Id.* at p. 622.)

Relevant here is the third class of persons entitled to quasi-judicial immunity, which "includes persons connected to the judicial process who are not public officials, arbitrators, or referees, but who serve functions integral to the judicial process and act as arms of the court." (*Holt, supra*, 85 Cal.App.5th at p. 622.) "This class includes (1) persons appointed by the courts for their expertise, such as mediators, guardians ad litem, therapists, *receivers*, Probate Code court investigators, custody evaluators, and bankruptcy trustees; and (2) persons not appointed by the courts but whose work product comes into the judicial process to be used by the courts, such as probation officers who prepare presentencing reports and social workers and psychiatrists involved in terminating parental rights." (*Ibid.*, italics added.) "Without immunity, these persons 'will be reluctant to accept court appointments or provide work product for the court's use. Additionally, the threat of civil liability may affect the manner in which they perform their jobs.'" (*Id.* at p. 623, quoting *Howard v. Drapkin* (1990) 222 Cal.App.3d 843, 857 (*Howard*).)

12

No California state court has squarely decided whether court-appointed receivers are entitled to quasi-judicial immunity. In *Holt* and in *Howard*, the Court of Appeal included receivers as among nonjudicial persons entitled to quasi-judicial immunity. (*Holt, supra,* 85 Cal.App.5th at p. 622; *Howard, supra*, 222 Cal.App.3d at p. 855.) But in neither *Holt* nor *Howard* was the court called upon to decide whether a court-appointed receiver enjoyed such immunity. (*Holt,* at pp. 615–616, 624–625 [court-appointed real estate broker protected by quasi-judicial immunity]; *Howard,* at pp. 847–848, 858–859 [psychologist who conducted evaluation of child in custody dispute protected by quasi-judicial immunity].)

Several federal courts have decided that court-appointed receivers are protected by quasi-judicial immunity. In *New Alaska Dev. Corp. v. Guetschow* (9th Cir. 1989) 869 F.2d 1298, 1303, the Ninth Circuit Court of Appeals held that receivers appointed by state courts are entitled to "absolute derivative judicial immunity." The court explained: "'[R]eceivers are court officers who share the immunity awarded to judges.' [Citations.] Absent broad immunity, receivers would be 'a lightning rod for harassing litigation aimed at judicial orders.'" (*Ibid.*) Other federal courts uniformly have concluded that state court-appointed receivers are protected by quasi-judicial immunity. (See, e.g., *Suny v. KCP Advisory Grp., LLC* (1st Cir. 2025) 152 F.4th 25, 31 [court-appointed receiver entitled to quasi-judicial immunity because it acts were judicial in nature]; *Trinh v. Fineman* (3d Cir. 2021) 9 F.4th 235, 237–238 ["We conclude that the policies underlying judicial immunity similarly support immunity for state court-appointed receivers"]; *Property Management & Invest., Inc. v. Lewis* (11th Cir. 1985) 752 F.2d 599, 603 [receiver immune from liability for decisions made in the course of administering the receivership]; *Brown v. Costello* (N.D.N.Y. 1995) 905

13

F.Supp. 65, 76 [policy of affording quasi-judicial immunity to court-appointed receivers is to ensure that they are able to carry out a judge's order without constant fear of litigation]; see *Davis v. Bayless, Bayless & Stokes* (5th Cir. 1995) 70 F.3d 367, 373 ["Court appointed receivers act as arms of the court and are entitled to share the appointing judge's *absolute* immunity" (italics added)].)

We agree that court-appointed receivers should enjoy quasi-judicial immunity. The policies and reasons for quasi-judicial immunity support extending such immunity to court-appointed receivers. Without immunity, receivers would be less likely to accept court appointment and the implied threat of liability could affect their decisionmaking process. (*Holt, supra*, 85 Cal.App.5th at p. 623.) In the situation presented by this case, for example, rather than liquidate when practicable, as required by the December 7, 2021 order, a receiver might decide to delay liquidation to avoid losses for which the receiver would be held liable. Or, a receiver, fearful of liability for any delay in liquidation, might decide to liquidate immediately even though ongoing settlement discussions could make liquidation unnecessary.

The extension of quasi-judicial immunity to court-appointed receivers leads to the question of the breadth of that immunity. Because one reason for granting quasi-judicial immunity is "to promote uninhibited and independent decisionmaking" (*Howard, supra*, 222 Cal.App.3d at pp. 843, 852–853), such immunity, we conclude, is limited to discretionary (nonministerial) acts and decisions, that is, "when they use their judgment or discretion in performing their jobs" (*id*. at p. 857, citing *Hardy v. Vial* (1957) 48 Cal.2d 577, 582 (*Hardy*)). "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable'

14

to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function." (*Antoine v. Byers & Anderson* (1993) 508 U.S. 429, 436, fn. omitted (*Antoine*); see *Forrester v. White* (1988) 484 U.S. 219, 229–230 [judges have immunity only for decisions made as adjudicators].) Such quasi-judicial immunity for court-appointed receivers would not extend to nondiscretionary, ministerial acts. (See *Holt, supra,* 85 Cal.App.5th at p. 623 ["the court's listing orders . . . vested an element of discretionary authority in Brock to assist the court in resolving the dispute between plaintiff and his sister"].) Nor would quasi-judicial immunity extend to intentional misconduct, such as self-dealing, that is not taken in the receiver's quasi-judicial capacity or in the complete absence of all jurisdiction. (*Regan v. Price* (2005) 131 Cal.App.4th 1491, 1496.)

There is no question that Plaintiffs' claims against Defendants arose out of conduct falling within the scope of Mosier's responsibilities as receiver. Plaintiffs argue that Mosier is not entitled to quasi-judicial immunity, however, because compliance with the December 7, 2021 order to liquidate their investment accounts was, they claim, ministerial and did not require Mosier to make a discretionary decision. We disagree. Plaintiffs fail to appreciate the language in the December 7, 2021 order that the receiver liquidate the accounts "as soon as practicable." Determining when it was practicable to liquidate the accounts was a decision requiring Mosier to "'exercise a discretionary judgment'" (*Antoine, supra,* 508 U.S. at p. 436) in light of the circumstances presented.

In the second petition for instructions, which was an exhibit to Plaintiffs' complaint, Mosier explained that settlement negotiations, which would have eliminated the need to liquidate the investment accounts, had occurred after December 7, 2021. In his declaration, Mosier stated he was

15

"reluctant to launch into a protracted and expensive process" of liquidating the accounts. Mosier also explained in the second petition for instructions that efforts to liquidate the investments accounts were paused once he was advised Simon Semaan's brother was selling a building that could pay all arrearages on workers' compensation coverage, and that TDAmeritrade had imposed requirements on closing the accounts that would have made Mosier the beneficial owner of the account proceeds.

Whether or not those circumstances actually made liquidating the investment accounts impracticable is not dispositive: It is sufficient to confer quasi-judicial immunity that Mosier, as receiver, had to make a decision about when it was practicable to liquidate. Quasi-judicial immunity protects both right and wrong decisions. "The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith." (*Gregoire v. Biddle* (1949) 177 F.2d 579, 581 (Opn. of L. Hand, J.), quoted in *Hardy, supra*, 48 Cal.2d at pp. 582–583.)

Government Code section 820.2 grants public employees immunity from liability "for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Because we conclude Mosier is protected by quasi-judicial immunity, we need not decide whether he also enjoys immunity under section 820.2.

16

## DISPOSITION

The order granting Mosier's anti-SLAPP motion is affirmed. Mosier may recover costs on appeal.


SANCHEZ, ACTING P. J.

WE CONCUR:


SCOTT, J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.